## METZGER v. ENGELHARDT CONST. CO. et al.

(Supreme Court, Appellate Division, Second Department. April 4, 1912.)

BANKRUPTCY (§ 178*)—FRAUDULENT CONVEYANCES.

Plaintiff, trustee in bankruptcy of a construction company, sued that company and a realty company to set aside a conveyance of the former as in fraud of creditors. The realty company was organized by the persons controlling the construction company to dispose of the latter's property. The land sold to the realty company was worth $114,000, subject to a mortgage of $78,350, leaving the value of the equity at $35,650, and the consideration was stock of the realty company of the par value of $38,200, which was disposed of for $34,196; a part of it being sold by the trustee in bankruptcy. Held, that the sale to the realty company was not void, as in fraud of the creditors of the construction company.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 264–274, 283, 284; Dec. Dig. § 178.*]

Appeal from Special Term, Queens County.

Action by Joseph J. Metzger, as trustee of the Engelhardt Construction Company, bankrupt, against the Engelhardt Construction Company and another. From a judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Charles J. McDermott, for appellant Engelhardt Const. Co.
Bartow S. Weeks, for appellant Engelhardt Bros. Realty Co.
J. Stewart Ross, for respondent.

THOMAS, J. The action is to set aside, as fraudulent against creditors, conveyances made by the Construction Company to the Realty Company, and was brought by the trustee in bankruptcy of the first company. The persons affected by the judgment are the stockholders of the Realty Company and the creditors in bankruptcy of the Construction Company. Salient facts are that the land was subject to mortgage liens of $78,350; that the value as found was $114,000, leaving an equity of $35,650; that the Construction Company, by the conveyance, received therefor stock of the Realty Company, and was thereby enabled to market $24,400 thereof at par to the Queens Residential Company for cash; that the company thenceforth reduced its unsecured debts; that the estate of the bankrupt, through its administrative officer, received some of the Realty Company's stock, and sold it at auction for $7,796 in money. So the trustee would avail himself of the fruits of the conveyance, as well as of the land conveyed.

An examination of the history is necessary. The Engelhardt brothers, Harry, Theobald, and Louis, dominated both companies of which Harry was president. The Construction Company was incorporated in 1903, among other things, to deal in real estate. The Realty Company was incorporated in 1908, to deal in real estate, with a capital of $50,000, and the brothers became its principal officers. In the interval, the Construction Company had become the owner of, and traf-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

ficked in, land of great value and heavily mortgaged, and the brothers Theobald and Louis furnished to it credit and money, in consideration whereof they severally were by agreement entitled to share in the profits of certain purchases. In 1908, 37 lots, a portion of those purchased in such joint adventure, were conveyed by the Construction Company to the Realty Company, in consideration of which stock of the latter company, to the amount of $15,800 par value, was issued to the Construction Company. The Construction Company used this stock as follows: It pledged 75 shares to the First National Bank of Ozone Park for a loan of $5,000. It transferred 30 shares to Theobald in settlement of his profits, pursuant to an agreement made in 1906, and 38 shares, a part of 125 shares, were pledged to the Queens County Trust Company for $10,000, and 15 shares were transferred to Louis for his interest in certain profits.

We now come to the agreements that resulted in the accused conveyances. The Queens Residential Company entered into two agreements, each dated April 30, 1909—one with the Construction Company to buy of it at par $24,400 of the Realty stock, and one with the Realty Company to buy at par $6,000 of its stock, both conditioned upon conveyance to the Realty Company of the land described in the complaint for $54,000 of the stock of the Realty Company. And so it was done; the stock of the Realty Company being increased $10,000 for the purpose. This conveyance included the land first conveyed for $15,800 of the stock, leaving as a consideration for the remaining land conveyed, pursuant to the agreement of April 30, 1909, stock to the amount of $38,200. So that for the first conveyance $15,800 was issued, and for the second conveyance $38,200, total $54,000, while $6,000 was issued directly to the Queens Residential Company, total $60,000. The following is the disposition of the 382 shares:

| | | | |
|---|---|---|---:|
| 244 shares | | sold to Queens Residential Company | $24,400 |
| 20 | " | sold to Realty Company for cash | 2,000 |
| 87 | " | pledged to Queens Trust Company and sold by receiver by order of court at $85 per share | 6,525 |
| 31 | " | in treasury sold by order of court and sold for | 1,271 |
| 382 | | | $34,196 |

This accounts for the conveyance attacked. It shows that the trustee in bankruptcy has sold 118 shares of stock arising from that conveyance for $7,796 and vested title in purchasers, and then procured a judgment declaring the agreement, whereof those shares were part consideration, void, and stripped the vendees under the court's order of the property which the stock represents. He sold to the vendees as if the stock validly represented property, took their money, and now would take the property. But that is not all that has been done. The Construction Company had sold $24,400 of the stock for money, and used it to reduce its indebtedness, whereof the estate was advantaged. And now the trustee has obtained the property for which the stock was issued, upon the ground that it was fraudulently issued. When the Trust Company took the stock, it held mortgages on the property described in the complaint for $15,000, and satisfied them, to the consequent benefit of the estate. It is almost unnecessary to

advert to the fact that the receiver has also sold the 75 shares of the stock first issued and pledged to the Ozone Bank at $71 per share for $5,325, as well as the stock received by Louis and Theobald Engelhardt, as already stated, and loaned to the Construction Company, and pledged by it, realizing $85 per share.

But it should not escape notice that the Queens Residential Company paid par in cash for 60 shares, that the Construction Company had the benefit of it, and yet the trustee would seize the capital on which the shares were issued. The land sold, so far as herein involved, and it is largely involved, was found to be worth $114,000, subject to mortgage of $78,350, leaving an equity of $35,650. The error of the referee in finding the equity $44,000 arose from noting the mortgages at $70,000. So the Construction Company sold land worth to it $35,650 for stock of the par value of $38,200, and, as has been seen, the stock sold, without reference to the amount of loans made on some of it, for $34,196, even under the embarrassments of selling at auction at a bankrupt sale. This appears a fair transaction. It is not important that the Realty Company was but the instrumentality of the Construction Company, a means for disposing of its property, and that the power that moved the one constrained the other, or that there was but one office and one set of facilities. However formal the Realty Company was, the Construction Company vitalized it, and through it sold its land at a fair price and gave its stock a par value. And then the federal court stamped its approval on the stock, for surely it did not make transfer of fraudulent stock. It reaped the benefit of par prices paid for the stock at its issue, and itself made new bona fide stockholders by selling the stock.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.